IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADAM P. KOHN, | ) | Case No. 1:19-cv-1352 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| GLENMEDE TRUST CO., N.A., *et al.*, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** |
| | ) | |

I. **Introduction**

Plaintiff Adam P. Kohn filed a "motion to compel defendants to compensate plaintiff's expert" on October 28, 2019. ECF Doc. 12. On October 31, 2019, Kohn filed a "motion for an in camera inspection of documents which defendants claim are privileged." (ECF Doc. 15). For the following reasons, Kohn's motion to compel (ECF Doc. 12) is GRANTED in part and DENIED in part. His motion for an in camera inspection (ECF Doc. 15) is DENIED.

II. **Background**

In May 2014, Kohn was a search consultant with CTPartners ("CTP") and held a total of 626,698 shares of CTP stock. ECF Doc. 1-2 at 4-5. Kohn wanted to liquidate his CTP stock, and, in July 2014, he entered an "investment management agreement" with defendants Glenmede Trust Company, N.A. ("Glenmede") and Robert Siewert to facilitate that liquidation. ECF Doc. 1-2 at 5. Kohn transferred 432,279 CTP shares into a Glenmede account. ECF Doc. 1-2 at 5. In November 2014, Kohn directed Siewert to sell 150,000 CTP shares at $24 per share; however,

Glenmede and Siewert did not compete the sale because they suspected Kohn was engaged in insider trading. ECF Doc. 1-2 at 6. Kohn had his remaining CTP shares transferred to an account with a different company; however, Kohn asserts that Siewert agreed to continue advising him about liquidating his CTP shares. ECF Doc. 1-2 at 6. The share price for CTP stock later fell to $2 per share. ECF Doc. 1-2 at 6.

In September 2018, Kohn filed a complaint in Cuyahoga County Court of Common Pleas alleging numerous causes of action, including breach of contract, breach of fiduciary duty, fraud, and negligence. ECF Doc. 1-2. In May 2019, Kohn filed an expert report by John Hewitt, which indicated that several of the claims in his complaint alleged violations of the Advisers Act, Office of the Comptroller of the Currency regulations, ERISA, and the Exchange Act. ECF Doc. 1 at 2-3; ECF Doc. 1-2 at 23-61; Docket for Cuy. Cty. Ct. Comm. Pls. No. CV-18-903584. On June 11, 2019, the defendants removed the case to this court. ECF Doc. 1.

**III.     Motion to Compel**

Kohn's motion to compel seeks an order directing defendants Glenmede Trust Company, N.A., and Robert Siewert to pay preparation, attendance, and travel expenses related to the defendants' November 1, 2019 deposition of plaintiff expert John Hewitt. ECF Doc. 12. Specifically, Kohn wants the court to order the defendants to pay Hewitt a total of $18,165 pursuant to the following fee schedule:

| Activity | Rate | Hours | Fee |
|---|---|---|---|
| Locate, prepare, and organize documents for production | $350 | 2.5 | $875 |
| Review documents and e-mail for production and testimony | $650 | 4 | $1,930[1] |
| Review Expert Witness Reports | $650 | 3 | $1,300[2] |
| Review relevant case law, statutes, and regulations | $650 | 4.5 | $1,950[3] |
| Outline relevant issues and facts | $650 | 3 | $1,950 |
| Review of GTC Expert Report-Supplemental and related authority | N/A | 2.6 | N/A[4] |
| Participation in Deposition | $650 | 8 | $4,550[5] |
| Total Fees at "Associate" Rate ($350/hour) | | 2.5 | $875 |
| Total Fees at "Expert" Rate ($650/hour) | | 25.1 | $16,315[6] |
| Travel Fees ($325/hour) | | 3 | $975 |

ECF Doc. 12 at 3; ECF Doc. 12-2. Kohn asserts that after Hewitt submitted his proposed fee schedule, defendants refused to compensate him for any activities other than his deposition attendance. ECF Doc. 12 at 1. Kohn's counsel claims that he was forced to seek a judicial resolution to this dispute because the defense counsel said he would call but did not. ECF Doc. 12 a 1. Finally, Kohn asks the court to order defendants to pay attorney fees associated with filing this motion. ECF Doc. 12 at 3.

The defendants respond that Kohn's motion to compel should be denied for three reasons. ECF Doc. 17. First, the defendants argue that Kohn did not comply with this court's meet-and-confer requirement under Local Rule 37.1. ECF Doc. 17 at 1, 4, 11-13. Specifically, the defendants assert that Kohn falsely represented that defense counsel said that he would call Kohn's counsel, and that Kohn made no attempt to contact defense counsel after the purportedly

---

[1] This value is inconsistent with the rate and hours in Hewitt's fee schedule. Four hours at a rate of $650 should yield a fee of $2,600. If the rate were $350, then 4 hours would yield a total of $1,400.
[2] This is another inconsistent value. Three hours should yield a total fee of $1,050 at a rate of $350 or $1,950 at a rate of $650.
[3] Another inconsistent value. Four and a half hours yields a total of $1,575 at a rate of $350 or $2,925 at a rate of $650.
[4] Hewitt actually did not provide *any* total figure for this activity, but he did include the hours for this activity in his total for his expert rate activities. ECF Doc. 12-2. At Hewitt's expert rate of $650, 2.6 hours should yield a total fee of $1,690.
[5] Yet another inconsistent value. Eight hours yields a total of $2,800 at a rate of $350 or $5,200 at a rate of $650.
[6] If one were to add the actually quoted fees for each of the activities, the total expert rate fees would equal $11,580. *See* ECF Doc. 12-2.

scheduled phone call did not occur. ECF Doc. 17 at 4, 12 & n.2. Second, the defendants argue that there is no factual basis supporting Hewitt's fees because: (1) Hewitt did not actually produce any documents as requested; and (2) Hewitt's failure to answer questions regarding the materials relied upon in his expert report indicated that he *did not* prepare for deposition. ECF Doc. 17 at 1, 2-11, 13. Finally, the defendants contend that Kohn's motion should be denied because he has not shown a legal basis for requiring defendants to pay preparation or travel fees for a deposition of a Kohn's expert – especially when they initially scheduled the deposition to take place at the expert's office, but changed the venue at Kohn's request.[7] ECF Doc. 17 at 1-2, 13-16.

### A. Meet-and-Confer Requirement

Local Rule 37.1 commands that, before seeking judicial resolution of a discovery dispute, "the party seeking [resolution must make] sincere, good faith efforts to resolve [the] dispute[]." L.R. 37.1(a)(1). Failure to comply with this rule is a "sufficient basis for the district court to conclude that denial [of a motion to compel is] appropriate." *Lott v. Coyle*, 261 F.3d 594, 604 (6th Cir. 2001) (movant failed to comply with telephone conference required under Rule 37.1).

Although Rule 37.1 applies to *discovery disputes*, it is unclear whether it applies to *fee disputes* arising out of discovery. If it does, Kohn has arguably not fully complied with Rule 37.1 because: (1) defense counsel *never* said he would call Kohn's counsel; and (2) even if he had, Kohn has not shown that his counsel made any further attempts to contact defense counsel before seeking judicial resolution to the fee dispute. *See generally* ECF Doc. 12; ECF Doc. 12-1. Nevertheless, the court need not resolve that issue because the parties briefing indicates that they had engaged in some communication regarding Hewitt's fees and had reached

---

[7] It is worth noting that the original venue was Hewitt's *primary office* in Stamford, Connecticut, and the relocated venue was *Hewitt's satellite office* in New York, New York. ECF Doc. 12 at 1.

an impasse. Further, the parties have had ample time to present their versions of the facts to each other and the court, and the parties' briefs and appended materials are sufficient for this court to reach a decision on the fee dispute. *See generally* ECF Doc. 12; ECF Doc. 12-1; ECF Doc. 12-2; ECF Doc. 17; ECF Doc. 17-1; *see also* ECF Doc. 21 (granting Kohn additional time to file a reply in support of his motion to compel and respond to defendants' version of the facts). Thus, the court declines to dismiss Kohn's motion to compel based on his failure to comply with Rule 37.1.

      **B.**      **Factual & Legal Basis for Fees**

Federal Rule of Civil Procedure 26(b)(4)(E)(i) provides that, "[u]nless manifest injustice would result, the court must require that the party seeking [deposition of an opposing party's expert under Rule 26(b)(4)(A) or (D)] pay the expert a reasonable fee for time spent in responding to discovery." In other words, to compel defendants to pay for Hewitt's fees, Kohn must show that the activities underlying the fees were "time spent in responding to discovery." If Kohn meets this burden, the defendants may avoid paying the fees only if they show that: (1) the fees for the activities were unreasonable; or (2) requiring the defendants to pay the fees would be manifestly unjust. If the defendants meet that burden, the court has discretion *not to require* the defendants to pay the fees. *Cf. Brown v. Tax Ease Lien Servicing, Inc.*, 776 F. App'x 291, 304 (6th Cir., June 4, 2019) (remanding for a "district court to exercise its discretion" when it had not made an explicit finding regarding manifest injustice or unreasonableness). "In assessing the reasonableness of an expert's fee, the court should consider the expert's education, training and experience; the prevailing rate for comparable experts; and the nature and complexity of the information sought." *Burgess v. Fischer*, 283 F.R.D. 372, 373 (S.D. Ohio 2012).

What activities qualify as "time spent in responding to discovery" under Rule 26(b)(4)(E) is not always clear, especially in light of the limited caselaw from the Sixth Circuit and its sister Courts. *Cf. Brown*, 776 F. App'x at 304 ("Our circuit has little caselaw on Rule 26(b)(4)(E) or its predecessor (Rule 26(b)(4)(C))."). In *Rote v. Zel Custom Mfg. LLC*, the Southern District of Ohio noted that:

> [a]lthough not universally accepted, numerous courts, including the Southern District of Ohio, have determined that a reasonable fee may include an expert witness's preparation and travel time. *See*, *e.g.*, *Burgess*[ *v. Fischer*, 283 F.R.D. 372, 373 [(S.D. Ohio 2012)]] (determining that experts may bill for their reasonable and necessary travel time, provided they travel to a place other than their office or residence for the deposition); *Anderson v. Jas Carriers, Inc.*, No. 1:12-cv-280, 2013 U.S. Dist. LEXIS 34743, 2013 WL 991902, at *1 (S.D. Ohio Mar. 13, 2013) (finding that an expert can recover for "related preparation time" for his deposition); *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 852 (7th Cir. 2012) (affirming trial court's order compelling reimbursement of expert fees for "(1) deposition preparation, (2) travel to and from the deposition, and (3) time spent reviewing his deposition transcript"); *Fleming v. United States*, 205 F.R.D. 188, 190 (W.D. VA. 2000) (finding that "it is well-established that time spent by an expert preparing for his or her deposition by opposing counsel is part of a reasonable fee under Rule 26(b)(4)(C)1Link to the text of the note"); *Borel v. Chevron U.S.A. Inc.*, 265 F.R.D. 275, 277 (E.D. La. 2010) (providing an in-depth analysis and citing numerous cases discussing the issue before concluding that opposing parties can recover reasonable fees for an expert's time spent preparing); *Collins v. Village of Woodridge*, 197 F.R.D. 354, 357 (N.D. Ill. 1999) (concluding that "time spent preparing for a deposition is, literally speaking, time spent in responding to discovery" and further observing that the Rule drafters did not limit recovery to only time spent during depositions).

No. 2:13-cv-1189, 2018 U.S. Dist. LEXIS 76346, at *12-13 (S.D. Ohio, May 7, 2018); *see also Ndubizu v. Drexel Univ.*, No. 07-3068, 2011 U.S. Dist. LEXIS 140792, at *10 (E.D. Pa., Nov. 16, 2011) ("Travel time may also be compensable under Rule 26(b)(4)(E)."); *accord Coultas v. Carlisle Brake & Friction*, No. 1:16-cv-2598, 2019 U.S. Dist. LEXIS 199338, at *8 (N.D. Ohio, Apr. 3, 2019) ("[C]ourts generally permit a reasonable deposition and preparation cost."). An expert's time spent searching through and reading records, in preparation for deposition or a production request, may also be "time spent in responding to discovery." *See*, *e.g.*, *Mohney v.*

*U.S.A. Hockey, Inc.*, 300 F. Supp. 2d 556, 582-83 (N.D. Ohio 2004), (requiring a party to compensate an opposition expert for time spent reviewing the opposing party's computer records for documents "that were ultimately produced in [a] very complex case").

Other courts, as the defendants note, have disagreed. *See*, *e.g.*, *Durkin v. Paccar, Inc.*, No. 10-2013, 2012 U.S. Dist. LEXIS 197951, at *10 (D.N.J., Dec. 28, 2012) ("The court further finds that preparation time does not fall under Rule 26(b)(4)(A) as 'responding to discovery under Rule 26(b)(4)(A).'"); *Foca v. Sears Roebuck & Co.*, No. 88-8908, 1989 U.S. Dist. LEXIS 12710, at *3 (E.D. Penn. Oct. 27, 1989) (ruling that travel expenses must be paid, but that "time spent in responding to discovery . . . does not include the *time* spent by the expert traveling to and from the deposition." (emphasis in original)). Defendants' argument that "time spent in responding to discovery" is limited to only the deposition time, however, is unpersuasive. The drafters of the rule could have easily limited compensation to "time spent in deposition," and their choice not to do so indicates a broader compensation intent. *See Cohen v. Jaffe, Raitt, Heuer, & Weiss, P.C.*, 322 F.R.D. 298, 301 (E.D. Mich., Aug. 23, 2017) (finding that the plain language of Rule 26(b)(4) indicates that the drafters intended a broader construction than "time spent by the expert in the deposition"). Further, the danger that deposition preparation is trial preparation benefitting an opponent can be mitigated by distinguishing between time spent in preparation for the deposition and time spent conferring with counsel about the deposition. *See*, *e.g.*, *All Cities Realty, Inc. v. CF Real Estate Loans, Inc.*, No. 05-615, 2008 U.S. Dist. LEXIS 118803, at *19 (C.D. Cal., Mar. 14, 2008) ("[T]he court will not reimburse fees for the experts' time spent *in conference with counsel* prior to the depositions.")

Nevertheless, such cases may guide the court in determining whether certain compensation is *reasonable under the circumstances*. *See Rote*, 2018 U.S. Dist. LEXIS 76346,

at *14 ("[A]lthough Plaintiffs correctly observe that the opposing party cannot control the expert's preparation time, such a check exists, namely, the court is vested with discretion to determine what fees are reasonable under the circumstances."). For example, it may be unreasonable to order a party to pay an opposition expert's fees for: (1) preparation time far in excess of deposition time; (2) travel costs when the deposition is at the expert's office or residence; or (3) information that must be disclosed by other rule, such as the disclosure of information relied upon in the creation of an expert report under Fed. R. Civ. P. 26(a)(2)(B)-(C). *Cf. Script Sec. Solutions, LLC v. Amazon.com, Inc.*, No. 2:15-cv-1030, 2016 U.S. Dist. LEXIS 156034, at *21 (E.D. Tex., Nov. 10, 2016) ("[M]any courts have limited the recovery to preparation time that does not exceed the amount of deposition time, and most have declined to require payment for preparation time when the ratio of preparation time to deposition time exceeds three to one."); *Burgess*, 283 F.R.D. at 373 ("If [the expert] has to travel somewhere other than his office or residence for the deposition . . . he may also bill for his reasonable and necessary travel time."); *Packer v. SN Serv. Corp.*, 243 F.R.D. 39, 43 (D. Conn. 2007) (ruling that an expert should not be compensated for collecting documents that he was required to produce under Rule 26(a)(2)(B)).

1. **Inconsistencies in Quoted Fees**

As a preliminary matter, Hewitt's fee schedule contained numerous inconsistent calculations in quoting the fees for individual activities. Specifically, Hewitt's quoted fees for "review[ing] documents and e-mail for production and testimony," "review[ing] expert witness reports," "review[ing] relevant case law, statutes and regulations," and "participation in deposition" indicated values *lower* than the values that the purported hourly rate and reported hours spent in those activities should have yielded. *See* ECF Doc. 12-2. Nevertheless, Hewitt's

total reflected a fee greater than the sum of each value specifically quoted for each individual activity. *See* ECF Doc. 12-2. Ambiguous terms are generally construed against the drafter, and courts usually give greater weight to specific terms when they conflict with general terms. *Cf. State Farm Mut. Auto. Ins. Co. v. Wilson*, 54 F. App'x 607, 609 (6th Cir. 2002) (noting that, when an insurance policy is ambiguous, specific clauses control general clauses); *Katz v. M.M.B., Co.*, No.50579, 1986 Ohio App. LEXIS 6734, at *5-6 (Ohio App. Ct. May 8, 1986) (noting that ambiguity should be resolved against the drafter and that specific terms limit general terms in a contract). Thus, Hewitt's activity-specific fees control.

### 2. Preparation Time

Hewitt's fee schedule quotes a total of 19.6 hours spent in preparation for his deposition, of which 2.5 hours are billed at the "associate rate" of $350 per hour and 17.1 hours are billed at the "expert rate" of $650 per hour. *See* ECF Doc. 12-2. The six separate activities Hewitt listed can be grouped into three categories: (a) document production; (b) research; and (c) expert report review. *See* ECF Doc. 12-2.

#### a. Document Production

Hewitt's document production and review fees included $875 for 2.5 hours spent to "locate, prepare, and organize documents for production" and $1,930 for 4 hours spent to "review documents and e-mail for production and testimony." ECF Doc. 12-2. Any time spent in completing these activities was undoubtably "time spent in responding to discovery," because defendants had subpoenaed Hewitt to produce documents related to his compensation, facts and data relied upon in his expert report, presumptions Kohn's counsel gave Hewitt to rely upon in his expert report, and rules or law relied upon in the expert report. *See* ECF Doc. 17 at 2; ECF Doc. 17-1 at 1-7. But the defendants argue that Hewitt's fees for those activities are

9

unreasonable or manifestly unjust because Hewitt: (1) never actually produced, and expressly declined to produce, the requested documents; and (2) demonstrated that he did not actually review them when he was unable to answer any questions about the documents he reviewed during the deposition. ECF Doc. 17 at 2-5, 7-8 & n.4 (citing ECF Doc. 17-1 at 32-36). The court agrees in part and disagrees in part.

First, the court agrees that Hewitt's fee to "locate, prepare, and organize documents for production" is unreasonable. A review of the parties' and Hewitt's correspondence indicates that Hewitt refused to produce any documents pursuant to the subpoena request because he believed that his firm – not himself personally, as the retained plaintiff's expert – was the custodian of any documents he relied upon in his expert report. *See* ECF Doc. 17-1 at 33-34 (letter from Hewitt and the managing partner of Pastore & Dailey LLC, refusing to produce documents pursuant to the defendants' subpoena and indicating that Kohn's counsel would instead "produce any relevant documents with any appropriate objections, redactions, etc."). It defies logic for Hewitt to claim that he spent time locating, preparing, and organizing documents for production, when he flatly refused to comply with the defendants' subpoena to produce documents and indicated that any relevant production would be made by either his firm or Kohn's counsel. Moreover, despite the court giving time for plaintiff additional time to file a reply brief, plaintiff has not filed any reply brief indicating that Hewitt actually did comply with defendants' production request. *See* ECF Doc. 21. Accordingly, the court finds that Hewitt's $875 fee to "locate, prepare, and organize documents for production" is unreasonable and relieves defendants of any duty to pay it.

Second, the court finds that Hewitt's fee to "review documents and e-mail for production and testimony" was reasonable, in part, and unreasonable, in part. Despite defendants'

10

arguments that the deposition record indicates Hewitt was unable to answer questions and, therefore, likely did not review documents and emails in preparation for deposition, a review of the deposition record undermines this argument.  *See* ECF Doc. 17 at 8 n.4.  Although it is true that Hewitt was unable to recall whether he relied upon certain specific documents or emails, *see* ECF Doc. 24-1 at 67-68, 125, 127, 183, the defendants have taken Hewitt's statements out of context.  Reading Hewitt's deposition transcript as a whole, the court finds that Hewitt was actually able to answer several questions about the documents he relied upon, and that his few statements indicating a lack of recollection were borne of caution to avoid an inadvertent false statement concerning documents in a very expansive record.  *See* ECF Doc. 24-1 at 55-67, 125-28, 183-84.  Thus, it was reasonable for Hewitt to charge a fee for reviewing documents and e-mails to prepare for his testimony.  *See Mohney*, 300 F. Supp. 2d at 582-83.  On the other hand, the fee for production is again unreasonable.  A review of Hewitt's deposition testimony indicated that he actually agreed to review his files and produce correspondence and other documents he might have relied upon in drafting his expert report.  *See* ECF Doc. 24-1 at 67, 184.  Nevertheless, requiring defendants to pay a fee for such production would be unreasonable because production of documents relied upon in an expert report is required under Rule 26(a)(2)(B)-(C).  *See Packer*, 243 F.R.D. at 43.  Because Hewitt's fee schedule does not indicate which part of the quoted $1,930 fee was for review and which part was for production, and because Kohn's burden to show that a fee was for an activity in response to discovery inherently includes the burden to show which fee is tied to which activity, the court declines to compel defendants to pay the $1,930 fee on the record currently before the court.

### b. Legal and Factual Research

Hewitt's research fees included $1,950 for 4.5 hours spent to "review relevant case law, statutes, and regulations" and $1,950 for 3 hours spent to "outline relevant issues and facts." ECF Doc. 12-2. Researching and outlining the relevant facts and law is part of a legal expert witness' task of producing an expert report, as mandated under Federal Rule of Civil Procedure 26(a)(2)(B). Because researching and drafting an expert report is part-and-parcel to Hewitt's employment as an expert witness for Kohn, undertaking such activities is not "time spent in responding to discovery" in relation to the defendants' deposition subpoena. Fed. R. Civ. P. 26(b)(4)(E)(i). Requiring defendants to pay for such activities would be unreasonable or manifestly unjust because it would effectively shift the burden of paying for Hewitt's trial preparation from Kohn to the defendants. *Cf. Durkin*, 2012 U.S. LEXIS 197951, at *10; *All Cities Realty, Inc.*, 2008 U.S. Dist. LEXIS 118803, at *19. Moreover, Hewitt should have been able to review any facts or law relied upon in the production of his expert report by reviewing his expert report – another line-item in Hewitt's fee schedule. *See* ECF Doc. 12-2. Thus, the court relieves defendants of any duty to pay Hewitt's $3,900 in research fees.

### c. Review of Expert Reports

Hewitt's fees also included $1,300 for 3 hours spent to "review expert witness reports" and $1,690 for 2.6 hours spent for "review of GTC expert report-supplemental and related authority."[8] ECF Doc. 12-2. The review of expert reports – including Hewitt's own report and opposing experts' reports – is preparation for deposition and, therefore, "time spent in

---

[8] As discussed above, Hewitt did not quote a fee for "review of GTC expert report-supplemental and related authority;" however, the 2.6 hours spent for this activity were included in his general total fee calculation. ECF Doc. 12-2. Because there is no specific term in conflict with the general total here, the general total controls. *Cf. Katz v. M.M.B., Co.*, 1986 Ohio App. LEXIS 6734, at *5-6. A fee of $1,690 represents the portion of the general total fee for the 2.6 hours spent on this activity. *See* ECF Doc. 12-2.

responding to discovery." Fed. R. Civ. P. 26(b)(4)(E)(i); *cf. Mohney*, 300 F Supp. 2d at 582-83. Defendants have not offered a compelling explanation as to why requiring them to pay for this preparation time would be unreasonable or manifestly unjust. *See generally* ECF Doc. 17. Accordingly, the court does not relieve the defendants of their duty to pay Hewitt's fees for preparing for the deposition by reviewing the expert witness reports.

### 3. Travel Time

Hewitt's fee schedule includes a $975 fee for 3 hours of travel time. ECF Doc. 12-2. Even assuming that travel time is "time spent in responding to discovery," charging that fee to defendants would be unreasonable or manifestly unjust. Here, the fee is unreasonable because the deposition took place at *Hewitt's own satellite office*. *Burgess*, 283 F.R.D. at 373; ECF Doc. 17 at 2, 13. Moreover, because defendants originally scheduled the deposition to take place at Hewitt's Connecticut office and changed the location to Hewitt's New York office at Kohn's and Hewitt's request, requiring defendants to pay for Hewitt's travel fees would be manifestly unjust. ECF Doc. 17 at 2, 13; ECF Doc. 17-1 at 9-19. Accordingly, the court relieves the defendants of any duty to pay Hewitt's travel fees.

### 4. Deposition Time

Finally, Hewitt's fee schedule includes $4,550 for 8 hours of deposition time. ECF Doc. 12-2. Nothing in the fee schedule indicates that Hewitt required a mandatory minimum 8-hour fee for participation in an expert deposition. *See* ECF Doc. 12-2. It is indisputable that participation in deposition is "time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E)(i). However, the record shows that Hewitt did not actually spend eight hours participating in the deposition, because the deposition lasted only four hours. ECF Doc. 17-1 at 64. Moreover, after Hewitt sent defendants an invoice for $2,600 for the four hours of

deposition time, and defendants promptly paid him. ECF Doc. 17 at 11; ECF Doc. 17-1 at 64-66. Accordingly, the defendants have discharged their duty to pay Hewitt for his participation in the deposition and have no duty to pay Hewitt for an additional four hours of deposition time that did not occur.

**IV.     Motion for In Camera Inspection of Documents**

In his "motion for an in camera inspection of documents which defendants claim are privileged," Kohn argues that the court should: (1) review ten e-mails between that defendants refused to produce based on attorney-client privilege; and (2) order the disclosure of redacted information concerning Glenmede's insider trading policy. ECF Doc. 15 at 1, 6-9. With regard to his request for review of the ten e-mails, Kohn argues that the court must discern whether the subject matter of the e-mails between Siewert, his supervisor Lawrence Hatch, and Glenmede's Chief Compliance Officer (and attorney) Maria McGarry indicated that legal advice was being sought and provided or that Hatch and McGarry were merely acting in their supervisory capacities. ECF Doc. 15 at 6-9.

The defendants respond that Kohn's motion should be denied because he failed to comply with this court's meet-and-confer requirement under Local Rule 37.1. ECF Doc. 22 at 1, 3-5. The defendants also argue that Kohn's motion is untimely because he filed it more than 10 days after the close of discovery, and that Kohn could have filed his motion at any time because the defendants produced their privilege log in September 2017 – before Kohn voluntarily dismissed his original suit against the defendants and refiled the claims in this case. ECF Doc. 22 at 1-3, 5-6. Moreover, the defendants assert that, even if timely, the court should deny Kohn's motion because the e-mails involved Siewert's reporting of suspicions of insider

14

trading to Glenmede's legal and compliance department in an effort to obtain legal advice on how to proceed. ECF Doc. 22 at 6-8.

Kohn replies that the court should excuse his failure to file a timely motion because the delay in filing will not impact the case schedule. ECF Doc. 23 at 2. Further, Kohn asserts that he had good cause for failing to timely file his motion because: (1) the state court had granted a motion for in camera review of the e-mails; (2) he voluntarily dismissed the case before the state court could conduct its review; and (3) he did not realize the discovery of the e-mails was still an issue until October 31, 2019. ECF Doc. 23 at 2-4. He also asserts that, because the defendants did not oppose his motion for in camera review before the state court, they would not be prejudiced by in camera review of the documents in this case. ECF Doc. 23 at 3.

**A.     Waiver**

Kohn notes that two of the e-mails included attorney James Belanger, but he does not specifically argue that Belanger might have acted in any capacity other than that of an attorney providing legal services. *See generally* ECF Doc. 15. Further, Kohn's motion does not offer any argument or legal references supporting his request for disclosure of information redacted from Glenmede's insider trading policy. *See generally* ECF Doc. 15. Because Kohn has failed to develop his argument respecting the e-mails to and from Belanger and the redacted portions of Glenmede's insider trading policy, those arguments are waived. *See United States SEC v. Sierra Brokerage Servs.*, 608 F. Supp. 2d 923, 952 n.29 ("[C]onclusory and undeveloped arguments made without citation to legal authority, such as this one, are waived." (citing *Gen Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 438, 441 (6th Cir. 2002))).

### B. Meet and Confer

As discussed above, the court may deny a discovery motion if a party fails to comply with Local Rule 37.1's requirement to make a good faith effort to meet and confer with opposing counsel before seeking judicial resolution of a discovery dispute. L.R. 37.1(a)(1); *Lott*, 261 F.3d at 604. Kohn does not in any way dispute that he failed to meet and confer with defendants' counsel before filing his motion, which effectively seeks to compel production of the ten e-mails identified in defendants' privilege log. *See generally* ECF Doc. 23. Instead, Kohn indicates that he simply noticed that he neglected to seek the documents subject to his motion on October 31, 2019 – the same day he filed his motion. *See* ECF Doc. 23 at 3. Because Kohn never complied with Rule 37.1's meet-and-confer requirement after he determined that the now-sought documents were never produced, his motion should be denied. L.R. 37.1(a)(1); *Lott*, 261 F.3d at 604.

### C. Excusable Neglect

Even if this court were to overlook Kohn's failure to comply with Rule 37.1's meet-and-confer requirement, his motion is still untimely. *See* ECF Doc 23 at 2 (admitting that Kohn filed his motion three days after the deadline for doing so); *see also* L.R. 37.1(b) (requiring discovery motions to be filed no later than 10 days after the discovery cut-off date); ECF Doc. 8 (setting a discovery cut-off date of October 18, 2019). Nevertheless, Kohn's failure to file a timely motion may be excused if he can show that excusable neglect caused his failure to file his motion before the deadline. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). Here, the court must evaluate five factors to determine whether Kohn's neglect was excusable: "(1) the danger of prejudice to the nonmoving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the

16

reasonable control of the moving party, and (5) whether the late-filing party acted in good faith."
*Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

      Even if this court were to assume that defendants would not be unfairly prejudiced or that granting Kohn's request for in camera review would not significantly impact the case schedule, Kohn has still not shown good reason for neglecting to timely file his motion. Here, the gravamen of Kohn's "good reason" argument is that he simply forgot about the issue until the deadline to raise it had passed. *See* ECF Doc. 23 at 3-4. This is insufficient. As demonstrated by Kohn's filing of a similar motion in state court, he knew about the defendants' claim of privilege and need for in camera review well before he refiled his claims in this case. *See* ECF Doc. 23 at 2-3. Yet Kohn did not bring the issue up to defendants or this court until 13 days after discovery closed. *See* ECF Doc. 23 at 2-3. Further, Kohn had no reason to assume the issue was resolved when he knew that he voluntarily dismissed his original suit before the state court conducted its in camera review of the requested documents and without an order compelling the defendants to produce the documents to him. *See* ECF Doc. 23 at 2-4; *see* Docket for Cuy. Cty. Ct. Comm. Pl. Case No. CV-13-871331 (court granted motion for in camera review on September 13, 2017, and Kohn voluntarily dismissed the case on September 15, 2017, before the deadline for defendants to produce documents to the court for in camera review). Finally, Kohn has not pointed to any factor beyond his control that inspired his unfounded assumption or otherwise prevented him from timely filing his motion. *See generally* ECF Doc. 23. Accordingly, Kohn has not shown that his failure to timely file his motion was the result of excusable neglect and his "motion for an in camera inspection of documents which defendants claim are privileged" (ECF Doc. 15) must be denied.

## V. Summary and Conclusion

Defendant are relieved of any duty to pay Hewitt's unreasonable fees for "locat[ing], prepar[ing], and organiz[ing] documents for production," "reviewing documents and e-mail for production," "review[ing] relevant case law, statutes, and regulations," "outlin[ing] relevant issues and facts," and Hewitt's travel to his own satellite office. Plaintiff has failed to meet his burden for compelling defendant to pay Hewitt's fees for "review[ing] documents and e-mail for testimony." And defendants have already discharged their duty to pay for Hewitt's four hours of participation in deposition. Defendants are not, however, relieved of their duty to pay Hewitt's $2,990 fees for preparing for deposition by reviewing the expert witness reports. Accordingly, Kohn's motion to compel (ECF Doc. 12) is GRANTED in part, with respect to the $2,990 in fees for reviewing the expert reports to prepare for deposition, but DENIED in part with respect to all other fees in Hewitt's fee schedule.

Finally, Kohn's "motion for an in camera inspection of documents which defendants claim are privileged" (ECF Doc. 15) is DENIED because it is untimely, because plaintiff has not shown that his failure to file his motion on time was the result of excusable neglect, and because he failed to comply with this court's meet-and-confer rule before filing his motion.

**IT IS SO ORDERED.**

Dated: December 31, 2019

Thomas M. Parker
United States Magistrate Judge