## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Adam P. Kohn, et al.,** | **Case No. 1:19cv1352** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Glenmede Trust Company,** | |
| **N.A., et al.,** | **MEMORANDUM OPINION AND** |
| **Defendants** | **ORDER** |

This matter is before the Court on the parties' supplemental briefing regarding the issue of subject matter jurisdiction. (Doc. Nos. 44, 45, 47, 48.) Also currently pending are Defendants' (1) Motion for Sanctions due to Plaintiff's Spoliation of Evidence (Doc. No. 10); (2) Motion to Strike Expert Report and Opinions of Robert Ranallo (Doc. No. 30); (3) Motion for Summary Judgment (Doc. Nos. 31, 32); and (4) Motion to Exclude Plaintiff's Expert John Hewitt (Doc. No. 42).

For the following reasons, the Court finds that it does not have subject matter jurisdiction over the instant action and hereby remands it to state court for further proceedings.

## I.    Background

### A.    Factual Allegations and Claims

Plaintiff Adam P. Kohn, individually and in his capacity as Trustee of the Declaration of Trust, filed this action in the Cuyahoga County Court of Common on Pleas on September 11, 2018 against Defendants Glenmede Trust Company, Robert Siewert, and John Does 1-5, alleging the following state law claims: (1) breach of contract (Count I), (2) gross negligence, recklessness and wanton disregard (Counts II and III); (3) negligent failure to supervise and train Defendant Siewert (Count IV); (4) negligent mismanagement of account (Count V); (5) promissory estoppel (Count VI);

and (6) fraud to enter into the contract, fraud in the inducement, fraudulent or negligent misrepresentations and omissions (Counts VII and VIII).  (Doc. No. 1-2.)  The Complaint does not assert any federal claims nor does it reference any specific federal statutes, regulations, or policies.

Plaintiffs' claims are based on the following factual allegations set forth in the Complaint.  In May 2014, Plaintiff Kohn was a search consultant for CTPartners (hereinafter "CTP"), an international executive search firm and publicly traded company on the New York Stock Exchange. (Doc. No. 1-2 at ¶ 8.)  He was not a member of the CTP Board of Directors and was not an executive officer.  (*Id*.)  Kohn held 626,698 shares of CTP stock, which were then trading at approximately $11 per share.  (*Id*. at ¶ 9.)  Kohn's "sole investment objective was to liquidate his CTP stock and diversify his financial portfolio for his family and future retirement."  (*Id*.)

Defendant Siewert was an investment advisor and managing director of Portfolio Management of the Glenmede Trust Company, N.A.  (*Id*. at ¶¶ 3, 10.)  He sought Kohn as a client and wanted Kohn to transfer all his CTP shares (which were then worth $6,893,000) to Glenmede for management.  (*Id.* at ¶ 10.)  To this end, Defendants created marketing materials and investment plans for Kohn's assets, which (among other things) indicated that it would be Glenmede's intent to liquidate all Kohn's CTP stock and reinvest it into a Glenmede portfolio designed for Kohn.  (*Id.* at ¶ 11.)

On July 16, 2014, Kohn (as Trustee for the Adam P. Kohn Declaration of Trust) executed an Investment Management Agreement with Glenmede.  (*Id.* at ¶ 12.)  Kohn then transferred 432,279 CTP shares into a Glenmede account to allow Defendants to liquidate these shares and "reinvest the proceeds in accordance with their discussions and plans."  (*Id*. at ¶ 13.)

2

Over the course of the next several months, Kohn and Siewert communicated regularly regarding pricing and market timing for the sale of the CTP shares. (*Id*. at ¶ 15.) On November 5, 2014, Kohn specifically requested that Siewert sell 150,000 shares of CTP stock at $24 per share. (*Id*. at ¶ 16.) However, "[b]etween November 5, 2014 and November 13, 2014, Siewert and Glenmede never executed the outstanding order because [they] thought Kohn may be trading on CTP inside information."[1] (*Id*. at ¶ 17.) Kohn provided Siewert and Glenmede with an email from the Chief Financial Officer ("CFO") of CTP indicating that Kohn was not an insider of CTP. (*Id*. at ¶ 18.) Nonetheless, Defendants did not sell Kohn's CTP shares and, instead, instructed him to "deliver out his remaining CTP shares at Glenmede to an account of his choosing." (*Id.* at ¶ 19.)

On November 12, 2014, Glenmede transferred Kohn's CTP shares to a Charles Schwab account held by Kohn. (*Id*. at ¶ 20.) Plaintiffs allege that, between that date and May 2015, Siewert told Kohn that he would continue to provide advice to Kohn about his CTP stock. (*Id*. at ¶ 21.) Kohn relied on Siewert's promise to advise him about liquidating the remaining CTP shares. (*Id*. at ¶ 22.) However, Siewert failed to provide timely advice to Kohn about selling the remaining CTP shares and, within six months, the share price fell to approximately $2 per share. (*Id.*) Kohn alleges that he lost "millions of dollars" as a result. (*Id.*)

As it is important to a resolution of the question of this Court's subject matter jurisdiction, the Court will discuss the specific allegations of each count in the Complaint. In Count I, Plaintiffs allege that Defendants breached the parties' July 2014 Investment Management Agreement. Specifically, Plaintiffs allege that "Glenmede and Siewert had a contractual obligation to timely execute Kohn's

---

[1] In their Motion for Summary Judgment, Defendants argue that they could not have sold Kohn's share for $24 per share because the share price never reached $24 per share. (Doc. No. 32.)

3

sell orders and to liquidate the 432,279 CTP shares that they caused Kohn to transfer to them in July 2014." (*Id.* at ¶ 26.)  Plaintiffs assert that "Defendants breached the contract with Plaintiff by wrongfully terminating the contract, failing to timely execute the November 5, 2014 sell order of 150,000 shares, failing to follow internal policies and procedures, wrongfully declaring that Kohn was an insider, and failing to provide timely written notice of intent to terminate the contract." (*Id.* at ¶ 28.)

Counts II and III assert claims for "gross negligence, recklessness, and wanton disregard."  In these Counts, Plaintiffs allege that Defendants had a fiduciary duty to Plaintiff which included the duties of due care and loyalty.  (*Id.* at ¶ 32.)  Count II alleges that Defendants breached these duties by (1) failing to timely notify Kohn in writing that Glenmede would not permit him to offer suggestions about the price and market sale timing for the CTP shares; (2) wrongly concluding that Kohn was an inside trader; (3) failing to communicate with the CFO of CTP to eliminate any concern that Kohn was an insider; (4) failing to execute sells orders and to liquidate the remainder of Kohn's shares; and (5) failing to follow compliance policies and procedures.  (*Id.* at ¶ 34-38.)

Count III is directed specifically towards Defendant Siewert and alleges that Siewert breached his fiduciary duty to Kohn by (1) concluding that Kohn was an inside trader without verifying the same; (2) advising Kohn that he would remain his advisor about the CTP shares although the shares were transferred out of Glenmede and into Kohn's Charles Schwab account; (3) failing to continue to advise Kohn about the sale price and timing of sales after he promised to assist him when the shares were with Charles Schwab; and (4) failing to liquidate the remainder of Kohn's CTP shares.  (*Id.* at ¶¶ 44-46.)

4

Count IV asserts a claim for negligent failure to train and supervise Siewert. Plaintiffs allege that Defendants Glenmede and John Does 1-5 "breached their fiduciary duty to Plaintiff by failing to properly train and supervise Siewert to follow policies and procedures, Ohio and federal regulatory laws and to thoroughly investigate the accuracy of Siewert's suspicions about insider trading." (*Id.* at ¶ 51.) Plaintiffs further allege that Defendants "breached their fiduciary duty to train and supervise Siewert to execute all sell orders and to liquidate Plaintiffs' shares in accordance with their plans." (*Id.* at ¶ 53.)

In Count V, Plaintiffs allege a claim for negligent mismanagement of account. In this Count, Plaintiffs assert that "Defendants' acts and omissions alleged herein constitute negligent mismanagement and supervision of Plaintiffs' account and a violation of Defendants' duty of due care to Plaintiff." (*Id.* at ¶ 57.)

Count VI alleges a claim for promissory estoppel. Plaintiffs allege that "[a]lthough Glenmede directed and Plaintiff was required to transfer his CTP shares to another account, Defendant Siewert told Plaintiff that he would continue to advise him about favorable sale prices and market timing of the CTP shares." (*Id.* at ¶ 60.) Plaintiffs allege that Defendants should have reasonably foreseen that Kohn would rely on these representations, and that Kohn did, in fact, reasonably rely on these representations to his detriment. (*Id.* at ¶¶ 60, 61.)

Finally, in Counts VII and VIII, Plaintiffs assert various fraud claims against Defendants generally and Defendant Siewert in particular. In particular, Plaintiffs allege that Defendants "made false representations of fact to Plaintiff that were material to Plaintiffs' decision to enter into" the Investment Management Agreement. (*Id.* at ¶ 64.) Plaintiffs also allege that Defendants fraudulently failed to disclose that (1) Kohn would not be permitted to request CTP price shares and market timing

of sales; and (2) Defendants would terminate the parties' Agreement without any ability for dispute resolution if they unilaterally determined that Kohn was an insider.  (*Id.* at ¶ 65.)  Regarding Defendant Siewert in particular, Plaintiffs allege that Siewert falsely advised Kohn that he would continue to advise Kohn about the CTP shares and assist Kohn in liquidating them, after Glenmede transferred the remaining shares to Kohn's Charles Schwab account.  (*Id.* at ¶¶ 68, 69.)

### B.    Procedural History

On May 15, 2019, while the matter was pending in state court, Plaintiffs served Defendants with an expert report from John Hewitt.  In his report, Mr. Hewitt summarized his opinion as follows:

> Briefly, my findings determined that Kohn did not possess nor trade on CTP inside information during the period at issue.  Further, I have also determined that Robert Siewert ("Siewert"), a Glenmede investment adviser, deceived Glenmede into believing that Kohn was trading on inside information.  Siewert' s deception violated Section 206(a) of the Investment Advisors Act of 1940 ("Advisors Act"), [15 U.S.C. § 80b-6], its principal fraud statute, and, as a result, Siewert, in his advising Kohn, also failed to perform various fiduciary duties including his duty of loyalty, honesty, care and good faith.  I have further determined that Glenmede failed in its supervisory and compliance responsibilities here, as it should have made a thorough investigation of this situation and taken appropriate action against Siewert.  Glenmede then failed in its fiduciary duties to Kohn, including its duty of loyalty, honesty, care and good faith.

(Doc. No. 1-2 at PageID#32.)  In the course of his opinion, Mr. Hewitt also referenced and discussed Exchange Act Rule 10b5-1, ERISA § 404(a)(1)(B), and Office of the Comptroller of the Currency ("OCC") regulations.  (*Id*. at PageID#32-64.)

On June 11, 2019, Defendants removed Plaintiffs' Complaint to the instant Court on the grounds that Hewitt's expert report revealed that "the Complaint is asserting claims under federal law," including Section 206(a) of the Investment Advisors Act of 1940, ERISA, OCC regulations, and/or SEC regulations.  (Doc. No. 1.)  Defendants further asserted that Mr. Hewitt's expert report indicated that Plaintiffs' claims "relate to" alleged violations of these same federal statutes.  (*Id*. at p.

6

2.)  Defendants argued that Plaintiffs could not avoid removal jurisdiction by "artfully casting their essentially federal law claims as state law claims."  (*Id*. at p.4.)  They maintained that "it is now apparent that Plaintiffs are asserting claims under federal law and therefore the United States District Court for the Northern District of Ohio has original jurisdiction over this civil action pursuant to 28 U.S.C. 1331 based on federal question jurisdiction."  (*Id*. at p. 3.)

Plaintiffs did not file a Motion to Remand, and neither party thereafter raised the issue of this Court's subject matter jurisdiction.

Defendants filed a Motion for Summary Judgment on January 14, 2020.  (Doc. Nos. 31, 32.) Therein, Defendants rely entirely on state law and seek judgment in their favor with respect to state law claims only.  (*Id*.)  Defendants do not address any purported federal claims, nor do they analyze or cite federal law relating to any of the federal statutes or regulations cited in the Notice of Removal. (*Id*.)

Plaintiffs filed a Brief in Opposition on March 4, 2020.  (Doc. No. 38.)  Therein, Plaintiffs principally rely on state law for the elements of their stated claims, although they do cite some federal law relating generally to the issues of fiduciary duty and insider trading.  (*Id*.)  In their Reply Brief, Defendants do not address any of the federal law cited by the Plaintiffs or otherwise address or analyze any federal claims under the Investment Advisors Act, ERISA, the OCC, and/or SEC regulations.  (Doc. No. 40.)

Subsequently, on April 3, 2020, Defendants filed a Motion to Strike the Expert Report and Opinions of Plaintiffs' expert, John Hewitt.  (Doc. No. 42.)  As noted above, it is Mr. Hewitt's expert report that formed the basis of Defendants' Notice of Removal.  Plaintiffs filed a Brief in Opposition

7

to Defendants' Motion to Strike Mr. Hewitt's report, to which Defendants responded.[2]  (Doc. Nos. 43, 51.)

On April 3, 2020, the Court issued an Order directing the parties to submit simultaneous, supplemental briefs regarding the issue of subject matter jurisdiction.  (Doc. No. 41.)  In particular, the parties were ordered to address the substantial federal question doctrine, including the elements articulated by the United States Supreme Court in *Gunn v. Minton*, 568 U.S. 251 (2013) and the four specific substantiality factors set forth in *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007).  (*Id.*)

The parties submitted their supplemental briefs on April 13, 2020.[3]  (Doc. Nos. 44, 45.) Response briefs were thereafter submitted on April 20, 2020.  (Doc. Nos. 47, 48.)

## II.    Subject Matter Jurisdiction

### A.    Standard of Review

Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  When a notice of removal is jurisdictionally deficient, a district court is required to remand the case even absent a motion to remand.  *See Probus v. Charter Comms., LLC*, 234 Fed. Appx 404, 406 (6th Cir. 2007) (district court erred by failing to remand *sua sponte* for lack of diversity removal jurisdiction); *Lexington-Fayette Urban Cty. Gov't Civil Comm'n v. Overstreet*, 115 Fed. Appx 813, 817-18 (6th Cir. 2004) (district

---

[2] Defendants also moved to strike the Expert Report and Opinions of Plaintiffs' damages expert, Robert A. Ranallo.  (Doc. No. 30.)  Plaintiffs filed a Brief in Opposition, to which Defendants responded.  (Doc. Nos. 35, 37.)

[3] On April 14, 2020, Plaintiffs moved to strike Defendants' supplemental brief on the grounds that it was not filed by close of business on April 13, 2020 as directed by this Court's Order.  (Doc. No. 46.)  The Court denied the Motion but cautioned Defendants that, if they failed to file their response brief by close of business on April 20, 2020, it would be *sua sponte* stricken.  Defendants timely filed their response brief.

court erred by failing to remand *sua sponte* for lack of federal-question removal jurisdiction).  Indeed, as the Sixth Circuit recently explained, "federal courts must catch jurisdictional defects at all stages of a case, even when substantial resources have already been invested in it."  *In re DePuy Orthopaedics*, 953 F.3d. 890, 892 (6th Cir. 2020).

In addition, "[a]s a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction."  *Petrofski v. Chrysler LLC*, 2008 WL 5725581 at *2 (N.D. Ohio Jan. 17, 2008).  Accordingly, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  The defendant bears the burden of showing that removal is proper and that the federal court has original jurisdiction to hear the case.  *See Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989); *Citigroup Global Markets Realty Corp. v. Brown*, 2014 WL 4748615 at * 3 (S.D. Ohio Sept. 23, 2014).

**B.      Analysis**

Here, the Court *sua sponte* questioned whether it possessed subject matter jurisdiction over the instant action and directed the parties to submit supplemental briefing addressing this issue.  In their briefing, Plaintiffs assert that this Court lacks subject matter jurisdiction and request a remand to state court.  (Doc. Nos. 44, 47.)  Defendants argue that this Court has subject matter jurisdiction over the instant action under both the artful pleading and substantial federal question doctrines.  (Doc. Nos. 45, 48.)

9

In the absence of diversity jurisdiction (which the parties do not argue is applicable here),[4] a defendant may remove a case to federal court if it could have been brought there originally.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  In other words, a case may be removed to federal court if the plaintiffs' allegations "aris[e] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  To determine whether federal question jurisdiction exists, federal courts consider the "well-pleaded" allegations of the complaint.  *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 357 (6th Cir. 2015).  Generally, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]."  *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).  *See also Funderwhite v. Local 55, United Association*, 702 Fed. Appx. 308, 311 (6th Cir. 2017).  However, there are several exceptions to the well-pleaded complaint rule.

The first exception is the artful pleading doctrine.  Under this doctrine, "plaintiffs may not 'avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims.'"  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 (6th Cir. 2007) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2 (1981)).  *See also Funderwhite*, 702 Fed. Appx. at 311.  A related exception is the complete-preemption doctrine, under which removal is proper "'when a federal statute wholly displaces the state-law cause of action through complete pre-emption.'"  *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  A third exception is the "substantial-federal-question doctrine, which applies 'where the vindication of a right under

---

[4] The Notice of Removal does not cite diversity jurisdiction as a basis for removal.  Moreover, the Court notes that the Complaint alleges that both Plaintiff Kohn and Defendant Siewert are Ohio residents.  (Doc. No. 1-2.)

state law necessarily turn[s] on some construction of federal law.'" *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)).

Here, Defendants do not contend that the second of these exceptions, i.e., the complete preemption doctrine, applies. (Doc. No. 48 at p. 6.) As noted above, however, they do argue that this Court has jurisdiction over this matter under the artful pleading and substantial federal question doctrines. The Court will address each of these doctrines in turn, below.

### 1.     The Artful Pleading Doctrine

In their supplemental briefing, Defendants argue that this Court has subject matter jurisdiction under the artful pleading doctrine because "the real nature of [Plaintiffs'] claims is *federal* regardless of express characterizations in the Complaint." (Doc. No. 45 at p. 3.) Defendants maintain that "there is no question that federal question jurisdiction exists for claims under ERISA, the Exchange Act, Rule 10b-5, and the Investment Advisors Act of 1940—all of the statutes relied upon by Mr. Hewitt in articulating the true nature of Plaintiffs' claims." (*Id.* at p. 5.) Therefore, Defendants argue, "this Court has jurisdiction to hear the claims set forth in the Complaint." (*Id.*)

Plaintiffs argue that the artful pleading doctrine does not apply. They assert that they "filed a Complaint in state court based upon state law from a contractual relationship between the parties." (Doc. No. 44 at p. 1.) Plaintiffs insist that, although Mr. Hewitt's expert report made mention of federal regulations, Plaintiffs are "not seeking to recover based upon any federal law." (*Id.*)

Under the artful-pleading doctrine, "a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute." *Mikulski*, 501 F.3d at 560 (citation omitted) (internal quotation marks omitted). Where it appears that the plaintiff may have purposefully attempted to

11

circumvent federal jurisdiction, "we consider whether the facts alleged in the complaint actually implicate a federal cause of action."  *Id.* at 561.  *See also Berera,* 779 F.3d at 358.  "Although occasionally a removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, most of them correctly confine this practice to areas of the law pre-empted by federal substantive law." *Id. See also Infostructure, Inc. v. Gibson Electric Membership Corp*., 2018 WL 4046514 at * 5 (W.D. Tenn. Aug. 24, 2018).

However, as the Sixth Circuit has explained, "the 'artful pleading' doctrine does not apply whenever it is possible to construe a state-law theory as a federal one."  *Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 532 (6th Cir. 2010).  "Otherwise, any complaint that invoked theories that appear in state and federal law would amount to a federal claim, even if the complaint invoked only state statutes or state constitutional provisions." *Id. See also City of Warren v. City of Detroit*, 495 F.3d 282, 287 (6th Cir. 2007) (noting that "an expansive application of [the artful pleading] doctrine would effectively abrogate the well-pleaded complaint rule.")  "Rather, '[t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim," *Rivet [v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)], or perhaps . . . where federal issues necessarily must be resolved to address the state law causes of action." *Id.*  "Where federal and state claims are not identical, the artful pleading doctrine has been held not to apply." *Her Majesty the Queen*, 874 F.2d at 340.  *See also City of Warren*, 495 F.3d at 287.

For the following reasons, the Court finds that Defendants have failed to demonstrate that Plaintiffs have artfully pled their claims to avoid federal jurisdiction.  It is clear from a review of the Complaint that Plaintiffs are asserting state claims under state law for breach of contract, promissory estoppel, fraud, and negligence.  While consideration of some of plaintiffs' claims may incidentally

involve the consideration of federal law, Defendants have not demonstrated that the facts alleged in the Complaint actually state or imply a cause of action under the Investment Advisors Act, Rule 10b-5, the Exchange Act, and/or ERISA. *See Mikulski*, 501 F.3d at 561. Nor have Defendants asserted that Plaintiffs' claims are identical to federal claims under any of the federal statutes and/or rules cited in Mr. Hewitt's report. *See Her Majesty the Queen*, 874 F.2d at 340. Finally, Defendants have not sufficiently argued or demonstrated that any of Plaintiffs' state law claims are preempted by federal law. [5] *See Mikulski*, 501 F.3d at 561.

Defendants also appear to argue that, by failing to object to removal, Plaintiffs have implicitly conceded that their claims are actually based on alleged violations of federal statutes and law. (Doc. No. 48.) This argument is without merit. The Court is not willing to draw such a conclusion solely from the fact that Plaintiffs elected not to file a motion to remand. More importantly, Plaintiffs' failure to object to removal is simply not relevant to the jurisdictional question at hand. Plaintiffs' failure to object does not relieve Defendants of their burden to support federal subject matter jurisdiction. *See Swartz v. Oracle Corp.*, 787 F.Supp.2d 686, 690 (N.D. Ohio 2011) (citing *Simon v. Wal–Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir.1999)). Nor does it relieve this Court of its independent obligation to confirm that it has subject matter jurisdiction over the instant action. *See Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018) ("Although no one has specifically addressed subject matter jurisdiction to this point, we have an independent

---

[5] Defendants cite several cases parenthetically for the general proposition that federal courts have exclusive jurisdiction over ERISA breach of fiduciary duty actions. (Doc. No. 45 at pp. 5-6.) Defendants, however, do not specifically argue or demonstrate that Plaintiffs' claims are completely preempted by ERISA. Indeed, in their response brief, Defendants expressly state that the complete preemption doctrine is not applicable herein. (Doc. No. 48 at p. 6.) In any event, upon careful review, the Court finds that the Plaintiffs do not assert any claims under ERISA.

obligation to consider it and may do so *sua sponte*.")  *See also United States v. Cotton*, 535 U.S. 625, 630 (2002) (finding that subject matter jurisdiction "can never be forfeited or waived.")

Accordingly, the Court finds that it does not possess subject matter jurisdiction over the instant action on the basis of the artful pleading doctrine.

## 2.  Substantial Federal Question Doctrine

Defendants next assert that this Court has subject matter jurisdiction under the substantial federal question doctrine because Plaintiffs' claims "are premised on the construction and application of federal law." (Doc. No. 48 at p. 2.)  They argue that "Plaintiffs' reference to alleged duties imposed on the Defendants by federal statutes means that any trial in this matter would require the interpretation of federal securities law, the standards required under various federal securities laws, and the determination of whether Defendants breached any such federal standards of law." (Doc. No. 45 at p. 8.)  Because "the vindication of rights in this case depends on construction of relationships created by federal law," Defendants assert that removal is proper.  (*Id.* at p. 9.)

Plaintiffs argue that their claims do not present a substantial federal question.  (Doc. No. 44 at p. 13.)  They maintain that "[a]lthough Mr. Hewitt cited to federal regulations such as ERISA, OCC and/or SEC regulations and 206(a) of the Investment Advisors Act of 1940, these regulations do not control the underlying litigation which is a contract for services and duties between private parties."  (*Id.*)  Plaintiffs further assert that, "[e]ven if these regulations were brought up in state litigation the state court is equipped to handle the issue of the regulations as an analogy." (*Id.*)  Lastly, Plaintiffs argue that the instant matter does not present a question of federal importance.  (*Id.*)

Jurisdiction based on the presence of a substantial question of federal law "remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski*, 501 F.3d at

14

565; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("[E]ven where a claim finds its origins in state rather than federal law . . .we have identified a 'special and small category' of cases in which arising under jurisdiction still lies.") (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). "The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction." *Mikulski,* 501 F.3d at 565. Instead, substantial federal questions "typically require 'the interpretation of a federal statute' that is so significant that a federal court should hear the case." *Miller v. Bruenger*, 949 F.3d 986, 992 (6th Cir. 2020) (quoting *Eastman v. Marine Mech. Corp*., 438 F.3d 544, 552 (6th Cir. 2006)).

Ultimately, the Supreme Court has held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313-14 (2005)). Thus, in order for the Court to appropriately exercise jurisdiction over this action, each of these requirements must be satisfied.

### a.       Necessarily Raised and Actually Disputed

Defendants argue that the first and second requirements – that a federal issue be necessarily and actually disputed—are satisfied because Counts I through IV of the Complaint "are premised on the alleged duties and alleged breaches therefrom articulated in Mr. Hewitt's expert report, which are all derived from federal securities law." (Doc. No. 45 at p. 9.) In this regard, Defendants assert that

"[i]n response to Mr. Hewitt's expert report, Defendants' expert offered opinions that Glenmede is restricted by federal law … from exercising discretion over assets held outside Glenmede, that Glenmede is required by federal law … to formulate policies and procedures to govern its activities regarding the use of inside information, that neither Glenmede nor Mr. Siewert are required to be registered under the Investment Advisers Act of 1940 ("Advisers Act"), that neither Glenmede nor Mr. Siewert violated Section 206(a)of the Advisers Act, that Glenmede's Insider Trading policy complied with, among other things, the standard of care as defined by federal rules (12 CFR 9.5(b)), and that Mr. Kohn violated Section 13 of the Exchange Act of 1934."  (Doc. No. 48 at p. 2.)

Plaintiffs acknowledge that Mr. Hewitt cited various federal regulations in his expert report but argue that this was purely for purposes of analogy.  (Doc. No. 44 at p. 13.)  Plaintiffs further assert that, even if a federal question needs to be addressed, a decision thereon would not resolve the case because "the underlying state issues and a determination of the facts are required for resolution of this matter which is why there is no mention of the federal regulations in Defendants' motion for summary judgment."  (*Id*.)

"To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim."  *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (quoting *Grable,* 545 U.S. at 315); *see also Charvat v. EchoStar Satellite*, LLC, 630 F.3d 459, 463 (6th Cir. 2010) ("Charvat's claim depends on the interpretation of federal law, because it turns on a violation of a federal statute.").  To be disputed, the parties must "cross swords over" the issue "such that two competing interpretations are asserted."  *Funderwhite v. Local 55, United Ass'n*, 702 Fed. Appx 308, 313 (6th Cir. 2017) (quoting *Mikulski*, 501 F.3d at 569).

16

In evaluating these elements, the Court first notes that, in their summary judgment motion, Defendants rely entirely on state law, do not address any purported federal claims, and do not analyze or cite federal law relating to any of the federal statutes or regulations cited in Mr. Hewitt's expert report.  (Doc. Nos. 31, 32.)  Rather, in that motion, Defendants argue that they are entitled to summary judgment in their favor as to all of Plaintiffs' claims because, between November 5 and November 14, 2014, it was "factually impossible" for Defendants to have sold Kohn's CTP stock pursuant to his request to sell at $24 per share because the stock never reached $24 per share.  (Doc. No. 32 at p. 9.)  Defendants further argue that it was "factually impossible" for them to have sold Kohn's shares after November 12, 2014, because this was "after the shares were transferred out of the Glenmede Account and held in Kohn's Charles Schwab account, over which Glenmede had no authority."  (*Id*.)  Citing *state* law, Defendants then assert that they had no obligation to provide advice to Kohn about the CTP stock once it was transferred out of Glenmede.  (*Id*. at p. 10.)  Lastly, and again exclusively citing *state* law, Defendants argue that "an investment firm owes no duty of care to clients after they transfer investments to a new firm, and firms are not responsible for a client's losses when they occur at another investment firm."[6]  (*Id*. at p. 11.)

Given the above, the Court has reason to question Defendants' insistence in their supplemental briefing that "[t]he claims in this case are premised on the construction and application of federal law."  (Doc. No. 48 at p. 2.)  Nonetheless, even assuming *arguendo* that the claims in the instant case raise questions of federal law that are both necessarily and actually disputed, the Court finds that it

---

[6] As noted *supra*, Defendants have also moved to strike Mr. Hewitt's expert report on the grounds that Mr. Hewitt's opinions constitute impermissible legal and factual conclusions that fail to satisfy the standards of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597-98 (1993).  (Doc. No. 42-1.)

lacks subject matter jurisdiction because Defendants have failed to demonstrate that the instant case presents a substantial federal question.

### b. Substantiality

Defendants argue that the Plaintiffs' claims present a substantial federal issue because "Plaintiffs do not reference federal law in some ancillary or insignificant manner; Plaintiffs rely almost exclusively on federal law to establish liability against the Defendants." (Doc. No. 45 at p. 9.) Plaintiffs contend that this matter does not involve a substantial federal question because their claims are highly fact-specific and do not implicate a broader federal interest. (Doc. No. 44 at p. 13.)

"To raise a substantial question of federal law, the federal issue must not only be contested but also substantial, 'indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" *Miller,* 949 F.3d at 993 (quoting *Grable*, 545 U.S. at 313). Notably, "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. Instead, courts must look "to the importance of the issue to the federal system as a whole." *Id.*

In the Sixth Circuit, in assessing whether a federal question of law is substantial, courts consider "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570. "[N]o single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Id*.

18

For the following reasons, the Court finds that there is not a substantial federal interest at issue in the instant case.  With respect to the first factor, it is undisputed that this case does not involve a federal agency, which weighs against characterizing the federal interest as substantial.  *See, e.g., Empire*, 547 U.S. at 700 ("Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court."); *Miller*, 949 F.3d at 993 ("Today's case lacks many of these same federal indicia. There is no federal agency present in this dispute."); *Mikulski,* 501 F.3d at 570 ("The first factor is both objective and apparent, and in this case it weighs against characterizing the federal interest as substantial because there is no federal agency in this dispute.").

The Court further finds that Defendants have failed to establish the second and fourth factors.  These factors require courts to "decide whether the question to be resolved is important" and, relatedly, "whether a decision as to the federal question will control numerous other cases." *Mikulski*, 501 F.3d at 570.  In deciding the importance or substantiality of a federal issue, courts often consider whether the case presents a purely legal issue or is fact-bound and situation specific.  For example, in *Grable*, the sole issue was whether the IRS was required to provide personal service, rather than service by certified mail, under a federal tax provision requiring notice prior to a seizure.  *Grable*, 545 U.S. at 310-11.  The Supreme Court held that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id*. at 315.  In contrast, in *Empire*, a health plan administrator sought to sue in federal court to obtain reimbursement of the amount it had paid for a beneficiary's medical care after the beneficiary obtained a settlement in a state court personal injury suit. *Empire,* 547 U.S. at 687-88.  The Supreme Court found the case did not present a substantial question of federal law, specifically distinguishing *Grable*:

19

> *Grable* presented a nearly "pure issue of law," one "that could be settled once and for all and thereafter would govern numerous tax sale cases." *Hart and Wechsler* 65 (2005 Supp.). In contrast, Empire's reimbursement claim, McVeigh's counsel represented without contradiction, is fact-bound and situation-specific. McVeigh contends that there were overcharges or duplicative charges by care providers, and seeks to determine whether particular services were properly attributed to the injuries caused by the 1997 accident and not rendered for a reason unrelated to the accident.

*Id.* at 700-01; *see also Gunn*, 568 U.S. at 263 ("Such 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction.") (quoting *Empire*, 547 U.S. at 701).

Also relevant to the importance of a federal issue is whether the question "implicate[s] any broader or more substantial issue." *Mikulski*, 501 F.3d at 571. For instance, in *Mikulski*, the Sixth Circuit held that the "interpretation of the effective date of an accounting provision that instructs companies on how to adjust their earnings and profits calculations to account for certain construction project interest expenses" was too specific to implicate any broader or more substantial issues. *Id.* On the other hand, the Second Circuit concluded that "whether NASDAQ violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO . . . is sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to 'the federal system as a whole.'" *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2nd Cir. 2014).

Here, Defendants argue that an element of Plaintiffs' negligence claims (i.e., the existence and nature of Defendants' alleged fiduciary duty to Kohn) turns on the construction of federal law. Defendants assert that, if the case survives summary judgment, resolution of Plaintiffs' claims will depend on several purely legal questions, including (1) whether Glenmede is restricted by federal law from exercising discretion over assets held outside Glenmede, and (2) whether Glenmede and/or Siewert are subject to the Investment Advisors Act. (Doc. No. 48 at p. 2.) In response, Plaintiffs

argue that this case does not involve purely legal issues but, instead, involves unique factual issues relating to the formation of the parties' contract, communications between Kohn and Siewert regarding the liquidation of Kohn's CTP stock, and alleged promises made by Siewert to continue providing investment management advice to Kohn once his CTP shares were transferred out of Glenmede.

For the following reasons, the Court finds that Defendants have not demonstrated that the instant action implicates a broad federal interest. First, the Court finds that the parties' dispute is inherently fact-specific and, therefore, insufficient to confer jurisdiction under the substantial federal question doctrine. Unlike the purely legal interpretation of a federal statute at issue in *Grable*, the instant case presents factual questions regarding the timing and nature of the communications between Kohn and Siewert as to the liquidation of Kohn's CTP stock and the transfer of Kohn's stock from Glenmede to Charles Schwab. In light of the fact-specific nature of Plaintiffs' claims, the Court cannot say (and Defendants do not argue) that a decision in the instant case would implicate any broad federal interest or control numerous other cases. *See Miller*, 949 F.3d at 993 (in assessing substantiality, courts consider "how broad the binding effect of the decision will be"); *Funderwhite*, 702 Fed. Appx at 314 (finding no substantial question because "our resolution of this case should be narrow and confined to the factual circumstances giving rise to the dispute"); *Fried v. Sanders*, 783 Fed. Appx. 532, 536 (6th Cir. 2019) (finding no substantial federal question where there was no reason to believe that the parties' dispute would "control numerous other cases going forward").

In addition, Defendants have not argued, or demonstrated, that the instant dispute carries any significance to the federal system as a whole. The Supreme Court emphasized the importance of this consideration in assessing substantiality in *Gunn, supra*. In that case, plaintiff Minton had previously

21

been represented by defendant Gunn in a patent infringement suit.  After Minton's patent was found

invalid in that action, Minton filed a legal malpractice case against defendant Gunn in state court,

alleging that Gunn's failure to raise a particular legal argument in the underlying patent case had cost

Minton the lawsuit.  *Gunn,* 568 U.S. at 255.  Although resolution of Minton's legal malpractice claim

necessarily required the application of patent law to the fact of his case, the Supreme Court found

that it did not raise a substantial federal question.  The Court explained as follows*:*

> There is no doubt that resolution of a patent issue in the context of a state legal
> malpractice action can be vitally important to the particular parties in that case.  **But
> something more, demonstrating that the question is significant to the federal
> system as a whole, is needed**.  That is missing here.

*Id*. at 260, 263-264 (emphasis added).  In the instant case, Defendants fail to even argue that Plaintiffs'

claims raise an issue that is "significant to the federal system as a whole."  This, in and of itself, is

fatal to their argument that substantial federal question jurisdiction exists.

In light of the above, the Court finds that Defendants' reliance on *Landers v. Morgan Asset*

*Management*, 2009 WL 962689 (W.D. Tenn. March 31, 2009) to be misplaced.  In that case, the

plaintiffs filed a shareholder derivative action in state court against various asset management and

investment companies, alleging damages arising from Defendants' failure to disclose its "unusually

risky management strategy."  *Id*. at * 2.  The plaintiffs asserted claims for breach of contract, breach

of fiduciary duty, negligence, contribution, and negligent misrepresentation.  Although plaintiffs did

not assert any federal causes of action, they expressly alleged throughout the complaint that the

defendants violated federal securities laws, not only in their factual allegations but also in stating their

claims.  *Id*. at *6.  The defendants removed the case to federal court, and plaintiffs filed a motion to

remand.

The district court denied plaintiffs' motion to remand, finding that plaintiffs' claims raised a substantial federal question that was necessarily raised and actually disputed. In considering the element of substantiality, the court found that the issues raised by plaintiffs' claims were important because the facts alleged by plaintiffs in support of their state law claims were "nearly identical to the facts alleged in support of federal actions for violations of federal statutes." *Id*. at * 8. The court further found that resolution of a federal question was necessary to establish the standard of care and, therefore, necessary to a resolution of plaintiffs' negligence claims. *Id.* Finally, the court concluded "the decision of the federal question will control numerous other cases." *Id.* at * 9. The court explained:

> Plaintiffs allege that Defendants violated SEC regulations, the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77a et seq., and the ICA. Specifically, Plaintiffs argue that mortgage-backed securities were illiquid securities for purposes of SEC guidelines limiting the proportion of illiquid securities in which open-end funds may invest. Resolution of this and other securities law questions would have a significant effect on numerous other cases. The principal theory pleaded by Plaintiffs, if successful, could have extensive implications for the business practices of investment management companies that invested in mortgage-backed securities. Because federal securities actions that raise the same theory are currently pending in federal court, there is also a substantial risk of inconsistent adjudications. Therefore, the fourth consideration also suggests that the Court should exercise jurisdiction.

*Id.*

The Court finds that *Landers* is distinguishable from the instant case. Unlike in *Landers*, the instant case does not involve a question of federal law that would "have a significant effect on numerous other cases" and/or "extensive implications for the business practices of investment management companies." Indeed, Defendants herein do not even argue that the federal issues implicated by Plaintiffs' claims carry such broad significance, pose a risk of inconsistent adjudications, or would otherwise have any wide-ranging impact on a matter of federal importance.

Nor have Defendants argued that the elements of Plaintiffs' state law claims are "identical to" federal causes of action under the federal authorities cited in Mr. Hewitt's report.

Moreover, the Court notes that several district courts (including at least one decision from the Northern District of Ohio) have disagreed with *Landers* and found that substantial federal question jurisdiction did not exist under similar factual circumstances.  For example, in *Electrical Workers Pension Fund, Local 103 v. Weiss*, 2010 WL 597717 (N.D. Ohio Feb. 17, 2010), the plaintiff filed a shareholder derivative action against defendants in state court, alleging that defendants "secretly manipulated [stock] options periods so as to divert millions of dollars of assets . . . to themselves at the expense of shareholders." *Id*. at * 2.  The plaintiff further alleged that defendants filed false and misleading statements in violation of generally accepted accounting principles with the SEC.  *Id*.  The complaint asserted claims for breach of fiduciary duty and/or aiding and abetting; abuse of control; gross mismanagement; constructive fraud; corporate waste; and unjust enrichment.  *Id*.  The defendants removed the case to federal court, and plaintiffs filed a motion to remand.

The district court granted the motion to remand.  In concluding the case did not present a "substantial" federal question, the district court expressly rejected the reasoning set forth *in Landers*, finding that it was not in accord with Supreme Court cases holding "that defendants must demonstrate more than an alleged violation of federal law if they are to prevail upon a motion to remand to state court." *Id*. at * 9.  Rather, the district court found that the federal issues implicated by the plaintiffs' shareholder derivative suit were not "substantial," explaining as follows: "The case would appear to require the resolution of disputed questions of fact followed by the relatively unambiguous application of federal law to those facts. This matter, therefore, would not seem to be especially important to the federal government as a potential source of precedent or for any other reason." *Id*.

24

at * 6.  Several other district courts have expressly rejected *Landers* for similar reasons.  *See e.g.,* *Valdez Entergy Resources, Inc. v. Miller*, 2012 WL 397814 at * 9 (E.D. Tenn. Jan. 20, 2012) (finding "the holding in *Landers* to be neither persuasive nor binding in this case"); *Randolph v. Forsee*, 2010 WL 5148293 at * 7-8 (D. Kan. Dec. 13, 2010) (same).

Finally, the third factor considers whether resolution of the federal question is dispositive of this case.  *Mikulski*, 501 F.3d at 571.  As discussed *supra*, it is not entirely clear that a federal question is necessary for resolution of the instant case given the fact that Defendants have moved for summary judgment based entirely on the application of state law.  Even aside from this issue, however, the Court finds that resolution of the federal issues identified by Defendants in their supplemental briefing are not necessarily dispositive of this case.  Defendants have not demonstrated, for example, that Plaintiffs' breach of contract claim is dependent on the resolution of a federal issue.  Nor have Defendants argued that any federal issues implicate or are necessary to the resolution of Plaintiffs' fraud claims. With respect to Plaintiffs' negligence claims, resolution of the question of whether Defendants were subject to the Investment Advisors Act and, if so, whether Defendants violated a standard of care under that Act might be dispositive of the particular claims set forth in Counts II through V.  On the other hand, however, if the Court finds that Defendants were subject to and breached a fiduciary duty under federal law, Plaintiffs would still be required to prove additional elements with respect to their negligence claims, including damages.[7]

Taking all four factors into account, the Court finds that they generally weigh against a finding of substantiality.  As discussed above, the case involves inherently fact-specific claims that do not

---

[7] The Court notes that Defendants have moved to strike the report of Plaintiffs' damages expert, Robert Ranallo. (Doc. No. 30.)  In addition, in their summary judgment briefing, Defendants argue extensively that, under Ohio law, Plaintiffs' tort claims are barred by the economic loss rule.  (Doc. No. 32 at pp. 13-15.)

implicate a broad federal interest or are likely to control numerous other cases.   And even to the extent any legal interpretation would be required, it would not resolve any substantial or important federal questions, as it would be relevant only to the highly specific context of this case.  Moreover, as the Sixth Circuit has repeatedly noted, "state courts are generally presumed competent to interpret and apply federal law."  *Mikulski*, 501 F.3d at 560 (citing *Zwickler v. Koota,* 389 U.S. 241, 245 (1967)).  *See also Miller*, 949 F.3d at 992 ("[F]ederal jurisdiction is not established simply because a state court may have to entertain a federal issue.  State courts are well-equipped to do so, when asked."); *Fried*, 783 Fed. Appx. at 537 ("[T]o the extent federal law arises on remand, Michigan courts are competent to apply it.")

Accordingly, the Court concludes the federal interest present in this case is not substantial.  As a result, Defendants have failed to establish that all of the requirements necessary to a finding of federal jurisdiction on the basis of a substantial federal question have been satisfied.[8]  Because federal subject matter jurisdiction is lacking, the Court will remand the case to state court.

### III.    Conclusion

For the reasons set forth above, the Court finds that it does not have subject matter jurisdiction over the instant action and hereby orders that it be remanded to state court.  As this Court lacks

---

[8] Accordingly, the Court need not assess the last requirement related to the potential disturbance of the established federal-state court balance.

26

jurisdiction, it does not reach Defendants' Motions for Sanctions (Doc. No. 10), Summary Judgment

(Doc. Nos. 31, 32) and to Strike (Doc. Nos. 30, 42).

**IT IS SO ORDERED**

                         *s/Pamela A. Barker*
                         PAMELA A. BARKER
Date:  May 1, 2020             U. S. DISTRICT JUDGE